Simons, J.
(dissenting). The history of the efforts of courts and Legislature to rid the judicial system of stale and merit-less claims is too well known to require extensive documentation here (for the history of one part of the problem see, e.g., Sortino v Fisher, 20 AD2d 25, 27-28; and Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3216:l et seq.). It is at least arguable that nowhere has the public paid a higher price for our shortcomings in doing so than in the field of medical malpractice. The burden of such litigation has helped create a crisis which has notably added to the cost of insurance and to the frustrations and disadvantages of practicing medicine in this State (see, L 1985, ch 294, § 1 [legislative findings]). True, the scope of the crisis goes far beyond calendar problems and has required legislation creating such things as a new malpractice insurance system (see, Matter of Medical Malpractice Ins. Assn. v Superintendent of Ins. of State of N. Y., 72 NY2d 753, 756-757; L 1985, ch 294; L 1986, ch 266) and more stringent procedures to discipline the medical profession (see, Matter of Levin v Murawski, 59 NY2d 35, 49; L 1975, ch 109; 1975 McKinney’s Session Laws of NY, Legislative Mem, at 1599, 1601). For at least the last 15 years, however, the Legislature has recognized that a critical part of the problem was stale and meritless litigation (see, Judiciary Law § 148-a, L 1974, ch 146, as amended [authorizing medical malpractice panels to evaluate claims]; 1975 McKinney’s Session Laws of NY, Legislative Mem, at 1599, 1602). Despite *15 repeated efforts since then to alleviate that problem it persists and, as noted in the memorandum accompanying the Comprehensive Reform Act of 1985, court delay and frivolous malpractice actions have continued and have "called into question” not just malpractice litigation but the tort system itself (see, 1985 McKinney’s Session Laws of NY, Mem of State Executive Dept. at 3019, 3021).
The Comprehensive Reform Act of 1985 (L 1985, ch 294) must be viewed against this background. It sought to address the litigation problems by three provisions now contained in CPLR 3406, the notice provision considered in this appeal, CPLR 3101 (d) (1) (i), which provided for greatly expanded discovery, and CPLR 8303-a which dramatically changed available sanctions and authorized judicial imposition of levies up to $10,000 against parties asserting frivolous claims or defenses in a medical malpractice litigation. The purpose of all of this was to try once more to reduce delay by bringing pending malpractice actions under the control of the courts early, rather than allow them to languish in lawyers’ filing cabinets, so that claims could be evaluated promptly, those with merit processed and those without merit eliminated.
CPLR 3406 requires a plaintiff to file a notice of medical malpractice action notifying the court of the commencement of a medical malpractice action so that it may be placed on an accelerated litigation calendar. The notice must be filed within 60 days after issue is joined and the time limit may not be extended by the parties, only by the court "upon good cause shown” as provided by CPLR 2004. The filed notice must include proof by counsel that, if demanded, authorization for hospital and medical records and discovery items specified in the administrator’s rules have been supplied to defendant. Pretrial conference is mandatory and the participating attorneys must be familiar with the action and authorized to make decisions concerning it. The placing of the action on the calendar, after notice is filed, serves to measure statutorily prescribed periods mandating completion of discovery in 12 months and readiness for trial within 18 months (CPLR 3406 [b]). Complementing this notice requirement are provisions greatly expanding disclosure so that the parties are provided with a basis to evaluate the claim and determine its proper disposition.
It is possible to construe the language of CPLR 3406 strictly, as the majority has, and deny the court power to dismiss for *16 failure to timely file the 60-day notice, but when the history and the structure of the legislation are considered it is difficult to see why anyone would think it necessary or desirable to do so. The statute makes clear that the action cannot proceed unless the 60-day notice is filed and that the time for filing it cannot be extended except upon a showing of good cause. Plaintiff has failed to establish good cause and it would seem self-evident the failure leaves the action moribund and mandates dismissal. Moreover, when one examines the case before us, the perversity of any result other than dismissal becomes clear; by counsel’s own statements he cannot establish good cause now and will not be able to do so in the future.
Plaintiff instituted this action in March of 1986. Defendant’s answer asked for plaintiff’s authorization to examine hospital and medical records along with disclosure of other materials. He was clearly entitled to these authorizations and supplying them required little effort by plaintiffs counsel. Nevertheless, the authorizations were not forthcoming and defendant requested them four more times by letter. Plaintiffs counsel admits he received the letters and that he neither acknowledged them nor delivered the requested authorizations to defendant. Finally, in March 1987 defendant moved to dismiss the complaint for failure to comply with the notice or discovery requirements contained in CPLR 3406 (a). On April 27, 1987, long after the 60-day period had expired, plaintiffs counsel filed a cross motion for leave to file a late notice.
Generally, if lawyers do not meet a legal deadline, they must, in the words of CPLR 2004, show "good cause” for their failure and that there is some purpose in excusing compliance. Counsel must satisfy the court that the litigation is worth perpetuating. In this case, however, counsel did not even attempt to do so. Indeed, he candidly admitted on oral argument that failure to file the 60-day notice was due to inattention to the file and he has offered not a word concerning the merit of the claim. The substance of his position is that he need not satisfy these requirements and establish good cause; plaintiff is entitled to "buy” an extension beyond the statutory 60-day requirement by the simple expedient of paying costs and the court is powerless to impose any other sanction.
A party asserting a claim has the responsibility to go forward with it. This statute was enacted by the Legislature when it determined that neither that responsibility nor interim measures designed to expedite medical malpractice *17 litigation, such as medical malpractice panels (see, Judiciary Law § 148-a), were a sufficient check on stale and meritless claims. The Comprehensive Reform Act in general, and CPLR 3406 in particular, were intended to reduce the prejudice sustained by the system itself as the result of such claims. The majority has analyzed the statute in terms of its effect on the defendant, however; unless the defendant demonstrates prejudice from the delay, plaintiffs failures are of no consequence and an extension of the 60-day time limit is available for the asking. That reduces the notice requirement of CPLR 3406 to an inconsequential annoyance. I agree with the Appellate Division (140 AD2d 104) that the Legislature could not have intended that result and that the power of the court to dismiss claims under such circumstances should be implied from the language of the statute.
I, therefore, dissent.
Judges Kaye, Titone and Hancock, Jr., concur with Judge Alexander; Judge Kaye concurs in a concurring opinion in which Judge Hancock, Jr., also concurs; Judge Simons dissents and votes to affirm in another opinion; Chief Judge Wachtler and Judge Bellacosa taking no part.
Order reversed, etc.